UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS MCDONALD; MARIAN
MCDONALD; and ALEX E. MCDONALD,

         Plaintiffs and
         Counterclaim Defendants,        Civil No. 03-1504-HA

    v.

                                       OPINION AND ORDER

SUN OIL COMPANY, SUNOCO, INC.,
and CORDERO MINING COMPANY,

         Defendants and
         Counterclaim Plaintiffs,
_____

THOMAS MCDONALD and MARIAN MCDONALD,
and ALEX E. MCDONALD,

         Third-Party Plaintiffs,

    v.

J.T. BATTERSON and SUSAN BATTERSON,
         Third-Party Defendants.

_____

HAGGERTY, Chief Judge:

1 - OPINION AND ORDER

This suit arises out of a deed sale to plaintiffs Thomas McDonald and Marian McDonald of more than 2600 acres of real property located in Jefferson County, Oregon. The purchase included the Horse Heaven Mine Property, an allegedly contaminated property (hereinafter referred to as the "Site" or "Horse Heaven").

In 2003, plaintiffs filed a Complaint against the sellers alleging breach of contract and fraud. Plaintiffs also allege violations of O.R.S. § 465.250 *et seq.* (Oregon's "Superfund" statute) and 42 U.S.C. § 9600 *et seq.* (CERCLA) and seek cost recovery, contribution, and a declaratory judgment regarding alleged contamination that defendant's[1] mining operations caused on the Site and to plaintiffs' residence property (hereinafter referred to as the "McDonald Ranch").

Defendant counterclaimed against plaintiffs for contribution and cost recovery for the Site. In April 2004, plaintiffs filed a third-party complaint against J.T. Batterson and Susan Batterson (the Battersons) seeking cost recovery and contribution if plaintiffs were found liable to defendant on the counterclaims.

Plaintiffs, defendant, and third-party defendants each seek summary judgment [110, 107, 101]. Defendant filed two motions to strike portions of the declarations of Thomas McDonald, Alex McDonald, and Marian McDonald [120, 160]. Plaintiffs also filed a motion in limine for sanctions and to remedy spoliation of evidence [172]. Oral argument on the motions was heard on January 30, 2006.

## I. FACTUAL BACKGROUND

---

[1] Sun Oil Company was the predecessor of Sunoco, Inc., and Cordero Mining Company was a subsidiary of Sunoco, Inc. that was dissolved in 1975. The three defendants are hereinafter collectively referred to as defendant or Sunoco.

2 - OPINION AND ORDER

Mercury mining operations began on the Site in 1934 under the direction of Horse Heaven Mines, Inc. (HHM). In 1936 defendant acquired all of HHM's stock. Mining operations continued until 1944 when a fire destroyed the mining facilities. In 1946, HHM sold all of its mining interests in Jefferson County to Cordero Mining Company, a solely owned subsidiary of defendant, and defendant dissolved HHM. Mining operations began again at the Site in 1955 and ceased in 1958.

In 1973, defendant conveyed over 2600 acres to plaintiffs, including the Site, via a Bargain and Sale Deed (1973 Deed). At the time of this purchase, the Site contained calcine tailings. Calcine tailings are remnants left after mercury has been extracted from rocks. According to plaintiffs, Wally Freeman (Freeman), a representative of defendant, informed Mr. McDonald that the calcine tailings had been put through a process whereby all mercury and any residual contaminants were removed. The 1973 Deed expressly reserved defendant's interests in the sub-surface mineral rights located at the Site, but transferred defendant's rights in the calcine tailings to plaintiffs.

In 1976 plaintiffs sold all their property by Warranty Deed except the forty acres containing the Site. In 1982, plaintiffs deeded these forty acres to Ray Whiting (Whiting), one of HHM's original founders, as payment for advice and assistance given during plaintiffs' purchase of the real property from defendant. In that transaction, plaintiffs reserved their rights to the calcine tailings on the Site until 2007. The Site was then conveyed to Whiting's daughter and grandson, third-party defendants Susan Batterson and J.T. Batterson (collectively the Battersons).

In 2001, the Oregon Department of Environmental Quality (DEQ) requested information from defendant regarding possible contamination on the Site. In 2002, DEQ determined that plaintiff's handling of the tailings had created an environmental release and ordered plaintiffs to refrain from removing or disturbing the tailing piles on the Site without DEQ approval.

3 - OPINION AND ORDER

Plaintiffs aver that when they purchased the 2600 acres, defendant made intentionally or recklessly false representations that the calcine tailings present on the Site portion of the acreage were commercially valuable and that all traces of mercury had been extracted out of the tailings. Plaintiffs further aver that defendant made these representations with the intent to induce plaintiffs to purchase the property. Plaintiffs claim that they relied on these representations regarding the calcine tailings in deciding to purchase the entire 2600 acres, and were damaged as a result of this reliance.

## II.  STANDARDS

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. Fed. R. Civ. P. 56(c).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Such an issue of fact is only a genuine issue if it can reasonably be resolved in favor of either party. *Anderson*, 477 U.S. at 250-51. This burden to demonstrate a genuine issue of fact increases where the factual context makes the non-moving party's claim implausible. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Mere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes invoking summary

judgment. *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). In other words, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (footnote omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. ANALYSIS

### 1. Plaintiffs' Motion in Limine

Defendant's experts, Mr. Donald Haas and Dr. Kathryn Johnson, prepared reports setting forth their opinions and provided plaintiffs with all materials considered in developing those opinions. They included no notes or drafts in that submission. Plaintiffs also omitted any notes or drafts in their expert submissions to defendant.

Defendant submitted a request to plaintiffs under Federal Rule of Civil Procedure 34 (Rule 34) for all documents reviewed or relied upon by plaintiffs' experts, including notes and drafts. Plaintiffs did not serve such a request on defendant. Following the deposition of Mr. Haas, plaintiffs sent an e-mail to defense counsel requesting expert report drafts and notes. This request was made at the close of discovery, in conjunction with a motion to extend discovery deadlines for a seventh time. Defense counsel filed an objection to the request to extend discovery.

On July 1, 2005, plaintiffs withdrew their request to extend discovery and did not submit a request for the information pursuant to Rule 34. Six weeks later, plaintiffs filed their first Motion in Limine for Sanctions and to Remedy Spoliation of Evidence.

Despite the lack of a Rule 34 request, in early August defendant produced to plaintiffs (1) copies of all draft reports prepared by the experts, including those with defense counsel's red-lined editorial comments; (2) all e-mail and postal mail correspondence between counsel and the experts; (3) all available handwritten notes taken by the experts; and (4) copies of articles and other publications reviewed by the experts, including highlighting, underlining and/or notes.   Plaintiffs then withdrew their motion in limine.

Over four months after defendant's production, and after the summary judgment motions were briefed, plaintiffs filed a second Motion in Limine for Sanctions and to Remedy Spoliation of Evidence.  Plaintiffs assert that defendant's experts destroyed drafts of their expert reports and other discoverable notes, resulting in prejudice to plaintiffs and compelling exclusion of the expert testimony or an appropriate jury instruction.  Plaintiffs contend there was spoliation of handwritten notes taken by the experts and that this spoliation deprives them of any opportunity to either determine the admissibility of the experts or to properly cross-examine them.  Plaintiffs also allege that defense counsel improperly exerted control over the experts' opinions.

Federal Rule of Civil Procedure 26(a)(2)(B) (Rule 26) requires the disclosure of an expert's identity, a handwritten report containing a statement of all opinions and the basis for those opinions, and the data considered by the expert in forming the opinion.  This rule does not require the production of an expert's working notes.  *Gillespie v. Sears, Roebuck & Co.,* 386 F.3d 21, 34-35 (1st Cir. 2004).  Subsequent to the 1993 amendments to Rule 26, courts have held that disclosure of information transmitted to or from the expert, including draft reports, is discoverable if the expert considered the information.  *See Fidelity Nat. Title Ins. Co. of N. Y. v. Intercounty Nat'l Title Ins. Co.,* 412 F.3d 745, 751 (7th Cir. 2005) ("A testifying expert must disclose and therefore retain whatever

materials are given him to review in preparing his testimony, even if in the end he does not rely on them in formulating his expert opinion.") (citations omitted); *see also Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 282-83 (E.D. Va. 2001); *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of New York, Inc.,* 171 F.R.D. 57, 63 (S.D.N.Y. 1997); *Karn v. Ingersoll Rand Co.*, 168 F.R.D. 633, 635-38 (N.D. Ind. 1996); *United States v. City of Torrance*, 163 F.R.D. 590, 592-94 (C.D. Cal. 1995). There is a split in authority regarding information given to an expert that contains attorney work product. The *Torrance* court noted that "the approach which is most consistent with the purpose of the Federal Rules of Civil Procedure is to require disclosure." *Torrance*, 163 F.R.D. at 593.

Defendant provided plaintiffs with all drafts and correspondence between the experts and defense counsel. The only information not produced were some working notes that the experts failed to retain. This information is not subject to Rule 26 disclosure.

Even assuming that the information sought was subject to disclosure, there are no grounds for an adverse inference that is required for spoliation sanctions. *See Trigon*, 204 F.R.D. at 287 (an adverse inference requires more than negligent loss, it "requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction" and "some quantum of blameworthiness is required") (quotation and citations omitted). There is no showing that the destroyed notes would have been relevant to some issue at trial, or that the experts or counsel knew of this relevance. Experts have "no legal duty to be a pack rat" and are not "required to retain every scrap of paper" created in preparing their opinions. *Fidelity National*, 412 F.3d at 751. It was reasonable for the experts to assume that retention of those notes was unnecessary.

7 - OPINION AND ORDER

Moreover, plaintiffs fail to establish the kind of prejudice from the loss of the experts' notes that is required for Rule 37 sanctions. Rule 37 sanctions are warranted for failure to disclose "without substantial justification" unless "such failure is harmless." Fed. Rule Civ. Pro. 37(c). The type of evidence that has been destroyed in this case is not related to a challenge of an expert's admissibility, as expert admissibility focuses "solely on principles and methodology, not on the conclusions" of the expert. *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Plaintiffs have received all necessary information relating to the basis of the experts' opinions and their methodology.

Plaintiffs also assert that they cannot properly cross-examine the experts because they cannot fully determine the extent to which the expert opinions were tainted by communications with counsel. However, this court concludes that all communications with counsel have been provided to plaintiffs. Moreover, the central inquiry on cross-examination of an expert "is not the question of if and to what extent the expert was influenced by counsel," but instead asks for the basis of the expert's opinion. *Nexxus Products Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 10 (D. Mass. 1999) (distinguished on other grounds by *Adler v. Shelton*, 778 A.2d 1181 (N.J. Super. 2001). "Examination and cross-examination of the expert can be comprehensive and effective on the relevant issue of the basis for an expert's opinion without an inquiry into the lawyer's role in assisting with the formulation of the theory." *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587, 595 (3d Cir.1984).

Plaintiffs also argue that the experts' opinions are biased and were improperly influenced by defendant. The suggestions made by defendant were editorial in nature and in conjunction with guidance from counsel that the experts' judgment should govern and they should only make changes

they deemed accurate.  Counsel does not act improperly by "offering editorial suggestions, which the expert [is] free to accept or reject."  *Goins v. Angelone*, 52 F. Supp.2d 638, 664 (E.D. Va. 1999).

### 2.  Third-party Defendants' Motion for Summary Judgment

Plaintiffs sued defendant for cost recovery of remedial action costs under O.R.S. 465.255, and for contribution for remedial action under O.R.S. 465.325.  Defendant counterclaimed against plaintiffs for cost recovery under O.R.S. 465.255 and CERCLA § 107(a) and for contribution for remedial actions defendant has incurred under O.R.S. 465.257 and CERCLA § 107(a).  Plaintiffs then sued the Battersons for the same four claims that defendant alleged against plaintiffs, seeking recovery from the Battersons if plaintiffs are found liable for any of the counterclaims brought against them by defendant.

Defendant has agreed to dismiss its cost recovery claims under O.R.S. 465.255 and CERCLA § 107(a).  Accordingly, plaintiffs' cost recovery claims (the First and Third Claims) against the Battersons are dismissed.

As to the contribution claims, plaintiffs have sued the Battersons for recovery of any amount for which plaintiffs are found liable as a potentially responsible party (PRP).  The Battersons seek summary judgment on these claims.

The liability between PRPs under CERCLA is limited to each party's equitable share of the total liability.  *Western Prop. Serv. Corp. v. Shell Oil Co.*, 358 F.3d 678, 685 (9th Cir. 2004) (between PRPs there is only a claim for contribution and the liability corresponds to each party's equitable share of total liability and is not joint and several); *Pinal Creek Group v. Newmont Mining Co.*, 118 F.3d 1298, 1306 (9th Cir. 1997) (a PRP is limited to a contribution claim and "cannot assert

a claim against other PRPs for joint and several liability").  PRPs can bring a third party action

seeking direct contribution from additional PRPs.

Here, plaintiffs did not bring a direct claim for contribution against the Battersons, but instead

chose to bring a claim for reimbursement of their own contribution liability.  The Third Party

Complaint states:

> If Third-Party Plaintiffs are found liable for contribution to Sunoco for
> any remedial action costs Sunoco incurs or incurred, Third-Party
> Defendants are liable for those contribution costs as current or former
> owners of the Horse Heaven Property.

Corrected Third Amended Complaint, ¶ 13.

This falls outside the proper scope of contribution claims between PRPs.  Plaintiffs seek

reimbursement from the Battersons for the equitable share of costs that is allotted to plaintiffs.  The

Battersons can be held responsible to plaintiffs only for direct contribution of any costs that constitute

the Batterson's equitable share.  Plaintiffs never requested leave from the court to amend the

Complaint to bring a proper claim for contribution.  Accordingly, third-party plaintiffs' motion for

summary judgment is granted.

### 3.  Defendant's Motion for Summary Judgment

Defendant moves for summary judgment against all of the claims brought by plaintiffs.  They

are discussed in turn below.

### A.  Claim One:  Breach of Contract

Plaintiffs brought a breach of contract claim against defendant, alleging that defendant

represented orally and in the 1973 Deed that the calcine on the Site had commercial value.  In

response to defendant's summary judgment motion, plaintiffs rely exclusively on the alleged oral

representation Freeman made at the time of the sale.

10 - OPINION AND ORDER

Defendant argues that any purported oral agreement is barred by the parol evidence rule and the doctrine of merger.  The parol evidence rule provides:

> When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. However this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in O.R.S. 42.220, or to explain an ambiguity, intrinsic or extrinsic, or to establish illegality or fraud. The term "agreement" includes deeds and wills as well as contracts between parties.

O.R.S. 41.740.

Application of the parol evidence rule depends on whether the writing is integrated.  An integrated writing is a final expression of the terms of the parties' agreement.  Whether the parties intended the writing to be integrated is a question of fact for the court, not the jury.  *Ambercrombie v. Hayden Corp.*, 883 P.2d 845, 850 (Or. 1994) (citation omitted).  In determining whether a writing was meant to be integrated, the court may review all relevant evidence, including parol evidence.  *Id.* at 851.

A court should look to the writing itself when deciding the issue of integration, because "the apparent completeness and detail of the writing itself may lead the court to conclude the parties intended the writing to be a complete integration of their agreement."  *Hatley v. Stafford*, 588 P.2d 603, 609 (Or. 1978).  Additionally, a court "should be aware of the fact that parties with business experience are more likely to reduce their entire agreement to writing than parties without such experience, and that this is especially true when the parties are represented by counsel on both sides."  *Id.*  In reviewing the viability of an oral term, a court should examine "whether the asserted oral term

11 - OPINION AND ORDER

is such that the parties, under the circumstances, might naturally have omitted it from the writing." *State ex rel. Cipriano v. Triad Mech., Inc.*, 925 P.2d 918, 924 (Or. App. 1996).

The 1973 Deed was prepared for McDonald by his own attorney and sets forth in detail the terms of the conveyance.  The 1973 Deed states that defendant conveys rights to the "buildings, improvements, privileges, hereditaments, and appurtenances to the same belonging or in anywise appertaining."  Declaration of James T. Esselman, Exhibit F.  It also specifies that defendant retains "all of the oil, gas, and other mineral rights thereon" but that defendant does not reserve rights to "surface rocks, such as agates, or other surface materials which are used for road-building or construction purposes, such as granite, marble, limestone, gravel, clay, caliche, calcine, gravel, and sand."  *Id*.

Plaintiff Thomas McDonald has testified that he owned a number of businesses, engaged in numerous real estate transactions, and bought the property for a business purpose.  He was represented by counsel, and it was his counsel who prepared the 1973 Deed.  These parties were sophisticated and likely would reduce their final agreement to writing.

Moreover, the alleged oral representations regarding the calcine would likely not have been omitted from the writing.  The 1973 Deed expressly addresses the issue of calcine and offers no warranties as to its commercial viability.

Plaintiffs argue the deed was not integrated because it did not contain an integration clause.  However, "the mere absence of an integration clause is insufficient to rebut the presumption of complete integration."  *Triad*, 925 P.2d at 924.

The court finds the 1973 Deed was fully integrated.  Evidence of any oral agreements is barred by the parol evidence rule.

12 - OPINION AND ORDER

Evidence of any oral agreement is also barred by the merger doctrine. The merger doctrine provides that when a deed is delivered pursuant to the terms of a previous agreement, the deed supercedes the contract as to all provisions. *Archambault v. Ogier*, 95 P.3d 257, 261 (Or. App. 2004) (citations omitted).

Plaintiffs argue that the alleged oral promises regarding the calcine were collateral to the deed and thus not superceded by it. "[C]ontractual provisions that are not included in the deed and do not affect the title, possession, quantity, or emblements of the land are deemed collateral to the promise to convey . . . and merge only to the extent that the parties intended the deed to be the final memorial of their bargain." *Id.* at 261 (quotation and citations omitted). The 1973 Deed specifically addresses calcine. The argument by plaintiffs that the alleged calcine representations were a collateral oral agreement is without merit. *Id.*

### B.  Claim Two - Fraud

Defendant also seeks summary judgment on plaintiffs' claim for damages based on fraudulent representations allegedly made by Freeman on behalf of defendant at the time of sale. To succeed on a fraud claim, plaintiffs must show by clear and convincing evidence that  (1) defendant made a material representation; (2) the representation was false; (3) defendant knew it was false or acted recklessly without any knowledge of its truth; (4) it was made with the intention it should be acted upon by plaintiffs; (5) plaintiffs were ignorant of its falsity; (6) plaintiffs acted in reliance on its truth; (7) plaintiffs had a right to rely on the representation; and (8) plaintiffs suffered an injury. *Smallwood v. Fisk,* 934 P.2d 557, 559 (Or. App. 1997) (citation omitted). Recklessness as to the truth of an assertion is demonstrated by a "definite statement of a material fact made by a party who does

not know the statement to be true, and has no reasonable grounds for believing it to be true." *Amort v. Tupper*, 282 P.2d 660, 664 (Or. 1955).

Plaintiffs assert defendant was reckless in that it operated the mine and other mercury mines, failed to test the calcine when it sold the property in 1973, and Freeman represented that the calcine was free of mercury while lacking knowledge regarding the truth of the assertion.

There is no dispute that defendant had tested the calcine during mining operations in the late 1950s, using the standard laboratory equipment at that time, and that those tests concluded there was no mercury in the calcine. In reality, there was one-half of one percent of mercury remaining. Defendant's Ex. R, Expert Report of Dr. Kathryn Johnson, at 8.

Defendant admits it did not re-test the calcine in 1973 when it sold the property. However, plaintiffs offer no evidence that a prudent seller in defendant's position would have re-tested the calcine. There is no evidence in the record that at the time of sale anyone expressed concern about health hazards relating to the calcine.

Moreover, any statement by Freeman in 1973 that calcine could be used on roads was true at the time made and for decades thereafter. Thomas McDonald testified that at the time of the purchase he was aware that Jefferson County used the calcine from the Site in its road constructions. He also testified that after the purchase he used the calcine for his roads, and that Jefferson County continued to use the calcine from the Site for its roads.

Plaintiffs fail to meet their burden of establishing a question of fact relating to the recklessness of Freeman's alleged representation.

### C. Claim Three: Negligence

14 - OPINION AND ORDER

Plaintiffs allege that defendant knew or should have known that the mining waste was hazardous and that the extraction process to remove all the contamination was unreliable. Plaintiffs assert that defendant failed to take reasonable care in testing the calcine, failed to warn plaintiffs of hazards, and that it was foreseeable the calcine would contain or release mercury. Plaintiffs seek (1) $1,200,000 in damages calculated as to the loss of value in the calcine currently as compared to the value it would have if usable for roads; (2) additional damages for costs to investigate and/or remediate the McDonald Ranch and the Horse Heaven property; (3) damages for mental anguish; and (4) punitive damages.

Defendant argues that this claim is barred by the Oregon Statute of Repose. Section 309 of CERCLA preempts state statutes of limitation, allowing untimely actions to go forward, but is silent regarding state statutes of repose. Section 309 of CERCLA provides:

> (a) State statutes of limitations for hazardous substance cases
>
> > (1) Exception to State statutes
> >
> > In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a).

Plaintiffs oppose defendant's motion by relying on a ruling that held § 309 of CERCLA preempted the Oregon Statute of Repose. *Buggsi, Inc. v. Chevron U.S.A., Inc.*, 857 F. Supp. 1427 (D.

Or. 1994).  The *Buggsi* court did not analyze the difference between a statute of repose and a statute of limitations.

Subsequent to *Buggsi*, the Fifth Circuit Court of Appeals held that "the plain language of § 9658 does not extend to statutes of repose," but only to statutes of limitation and that the "differences between statutes of limitations and statutes of repose are substantive, not merely semantic." *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005).  The *Burlington* court acknowledged that courts have sometimes failed to distinguish a statute of repose from a statute of limitations when analyzing the applicability of this section of CERCLA, and cited *Buggsi* and other cases.  Nevertheless, the court noted that these types of statutes are quite different. *Id.* at 363.  A statute of limitations establishes a time period in which there is a right to sue after a plaintiff receives an injury, and a statute of repose establishes a right not to be sued after a legislatively determined period from an act by defendant.  *Id.*

This court agrees with the analysis of the *Burlington* court that there is a substantive difference between a statute of limitations and a statute of repose, and that § 309 of CERCLA extends only to statutes of limitations.  Accordingly, defendant is entitled to summary judgment because plaintiffs' negligence claim is barred by Oregon's Statute of Repose.

           a.  Punitive Damages

Plaintiffs seek punitive damages under the negligence claim.  As the court has found the negligence claim is barred by the statute of repose, the punitive damages claim fails for the same reason.

Assuming, *arguendo*, the punitive damages claim could be reviewed on its merits, it still fails. In analyzing the fraud claim above, the court found that defendant's conduct failed to meet the

standard of recklessness.  Plainly, defendant's conduct did not rise to the level of malice, a reckless

and outrageous indifference to a highly unreasonable risk of harm, or a conscious indifference to the

health, safety and welfare of others, as is required for punitive damages.  O.R.S. 31.730 (2003).

> b.  Mental Anguish

Mental anguish absent physical harm may be pursued only for a violation of a legally

protected interest of a plaintiff apart from an ordinary tort claim for negligence.  *Hammond v. Cent.*

*Lane Comm. Ctr.,* 816 P.2d 593, 596 (Or. 1991) (citing *Nearing v. Weaver*, 670 P.2d 137, 140 (Or.

1983)).  Oregon courts have interpreted "legally protected interest" as requiring a duty distinct from

the duty under negligence to avoid the foreseeable risk of harm.  *Curtis v. MRI Imaging Serv. II*, 941

P.2d 602, 608 (Or. App. 1997).  Here, defendant had no such duty.  Accordingly, plaintiffs mental

anguish claim fails.

> **D.  Claim Four: Negligence *Per Se***

Plaintiffs allege two claims of negligence *per se*.  If proved, such claims would result in strict

liability for defendant.  Plaintiffs allege defendant violated the Oregon Hazardous Waste Statute and

a regulation promulgated under the Oregon Solid Waste Act.  In order to state a claim for negligence

*per se* under a statute, plaintiffs must allege that (1) defendant violated a statute; (2) plaintiffs were

injured as a result of that violation; (3) plaintiffs were a member of the class of persons meant to be

protected by the statute; and (4) the injury plaintiffs suffered is of a type that the statute was enacted

to prevent.  *McAlpine v. Multnomah County*, 883 P.2d 869, 873 (Or. App. 1994).

For negligence *per se* based on violations of an administrative regulation rather than a statute,

the statute must support a private right of action under the *McAlpine* four-part test.  *Ettinger v. Denny*

*Chancler Equip. Co., Inc.*, 910 P.2d 420, 422 (Or. App. 1996).

a.  Oregon Hazardous Waste Law

Plaintiffs claim defendant violated the labeling requirements of O.R.S. 453.035.  Under the terms of the statute, those labeling requirements would not take effect until labeling standards were adopted by the State Health Officer.  Plaintiffs acknowledge the necessary standards were adopted after the sale of the Site at issue in this case, but argue that the Act itself established some labeling requirements prior to the adoption of the standards.

Section 5 of the Act states:

> (1) The State Health Officer shall adopt standards for the labeling of hazardous substances.
>
> *  *  *
>
> (2) The State Health Officer shall require:
>
> [Nine items that must be included in the regulations, but which are not relevant to this court's analysis.]

Oregon Laws 1971, c. 409, § 5(1) - (2).

The legislature did not frame the nine items as direct requirements to the regulated community, but as points to be included in the regulations promulgated by the State Health Officer.  Accordingly, no immediate effect on the regulated community was intended.

Plaintiffs also argue that this section was meant to have immediate effect because the statute prohibits any misbranded hazardous substance, and "misbranded hazardous substances" is defined as "a hazardous substance that does not meet the labeling requirement of O.R.S. 453.035 [the nine items in 5(2) above]."  O.R.S. 453.005(13).  Plaintiffs argue that if the legislature meant for those items to become effective only after the promulgation of regulations, they would have made the definition "a

hazardous substance that does not meet the labeling requirements of regulations promulgated under O.R.S. 453.035." Pls. Reply Br. at 30.

The plain language of O.R.S. 453.035 states that the State Health Officer shall promulgate regulations, and gives some requirements for those regulations. Identifying a misbranded substance as one that does not follow section 5 fails to negate the specific language of 5(1) requiring regulations be promulgated. This court concludes that the labeling requirements were not in effect at the time of the 1973 Deed.

Even if the labeling requirements were in effect at the time plaintiffs purchased the Site, the *McAlpine* factors still must be established to succeed on a claim for negligence *per se*. Plaintiffs fail to meet this burden.

The Act defines a hazardous substance as one which "may cause substantial personal injury or substantial illness during or as a proximate cause of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children." Oregon Laws 1971, c. 409, § 1(7)(a). This law was modeled after a federal law, which both parties agree is inapplicable to purchasers of calcine in a commercial land sale. Plaintiffs argue reference to the federal law is inappropriate, yet offer no evidence that the Oregon law differs in any substantial manner from the federal law in order to preclude such a comparison. The legislative history of the Oregon Act indicates that the legislature was concerned with the same issue that the federal law addressed – protecting children from dangerous household products. Additionally, Oregon courts have recognized that federal case law may be used to construe state statutes that are patterned upon a federal statute. *Badger v. Paulson Inv. Co.*, 803 P.2d 1178, 1182 (Or. 1991). Plainly, plaintiffs fall

outside the class of persons the statute was designed to protect, and  plaintiffs fail to meet the third prong of the *McAlpine* test.

Plaintiffs also cannot satisfy the injury requirement of the *McAlpine* test.  To meet this test, plaintiffs must prove they were injured and that their particular injury is the type that the statute was meant to protect.  Plaintiffs do not claim any physical injury.  The only injury plaintiffs claim is economic, and, as evidenced by the language of the statute, such injuries fall outside the scope of the statute.

### b.  Oregon Safe Storage Regulation

Plaintiffs also argue defendant violated O.A.R. 340-61-070(1), a regulation establishing standards for the safe storage of solid waste, which was promulgated under the Solid Waste Management Act.  This claim also fails to meet the requirements of the *McAlpine* test.

Plaintiffs cannot establish the first requirement, that defendant violated the regulation through improper storage of the calcine.  At the time of the land sale, the calcine was not a solid waste, and was not subject to the regulation.  The Solid Waste Management Act defines waste as "useless or discarded" materials.  O.R.S. 459.005(24).  At the time of the sale, the calcine at issue had been used by Jefferson County for road construction, and was considered valuable by plaintiffs.  It was not a "useless or discarded" material.

Plaintiffs also cannot establish the third and fourth factors of the *McAlpine* test.  The statute's enforcement provision provides a mechanism for the Environmental Quality Commission to enforce its regulations, not for a private party in plaintiffs' position to file a private right of action.  Moreover, plaintiffs have alleged no health-related injury, which is the type of injury the regulation was intended to prevent.

20 - OPINION AND ORDER

### E.  Claim Five: Cost Recovery Under Oregon Law

Plaintiffs acknowledge that PRPs are not entitled to cost recovery under Oregon law. Accordingly, they dismiss their cost recovery claim with respect to the McDonald Ranch.  As to the Horse Heaven property, plaintiffs assert cost recovery is property because they are not PRPs under Oregon law.

PRPs include:

> (a) Any owner or operator at or during the time of the acts or omissions that resulted in the release;

> (b) Any owner or operator who became the owner or operator after the time of the acts or omissions that resulted in the release, and who knew or reasonably should have known of the release when the person first became the owner or operator;

> *    *    *

> (d) Any person who, by any acts or omissions, caused, contributed to or exacerbated the release, unless the acts or omissions were in material compliance with applicable laws, standards, regulations, licenses or permits.

O.R.S 465.255(1)

Plaintiffs Thomas and Marian McDonald expressly reserved "the calcine dump located on the property and the right of removal of the calcine for twenty-five years" when they conveyed the property.  Affidavit of Stephen L. Naito, Ex. 1.  Accordingly, they have owned and operated the calcine since 1973, and will own it until February 4, 2007.

In Oregon, an owner of property on which contaminants were placed is not a statutorily innocent party, even if the owner did not know about the contamination, did not give permission, derived no benefit or use, and did not receive any enhancement in property value.  *Newell v. Weston*, 946 P.2d 691 (Or. App. 1997).  The *Newell* court found that a property owner who was unaware that

a tank that leaked contaminants was placed on his property was a PRP, but under equitable considerations had no liability. Here, a claim of statutory innocence is misplaced, because plaintiffs Thomas and Marian McDonald were the owners of the Site and remain the owners of the calcine, even if they were unaware of the contamination. Moreover, they derived benefit from the calcine.

This court has also found purchasers of contaminated property to be PRPs even though they did not know of the contamination but failed to conduct "all appropriate inquiry" into the history of the property. *Catellus Dev. Corp. v. L.D. McFarland Co.*, 910 F. Supp. 1509, 1513 n.1 (D. Or. 1995) (reviewing and adopting the prior findings and recommendations of the Magistrate Judge).

Under CERCLA, in determining whether all appropriate inquiries were conducted, a court reviews any searches conducted of historical sources and public records; relevant specialized knowledge; the relationship of the purchase price to the value of the property if the property was not contaminated; commonly known or reasonably ascertainable information about the property; the degree of obviousness of the presence or likely presence of contamination; and the ability to detect the contamination by appropriate investigation. 42 U.S.C. § 9601(35)(B)(iii).

Here, plaintiffs Thomas and Marian McDonald knew the property had been a mercury mine, understood that mercury was dangerous, and were aware that some bricks on the property were contaminated. Defendant's Ex. RR, Deposition of Thomas McDonald, at page 13, lines 16-19 (knew the Site was a former mercury mine); page 166, lines 19-23 (knew mercury was dangerous); page 216, lines 5-17 (knew the brick firehouse was contaminated with mercury). They should have conducted appropriate inquiries into any other potential contamination. In arguments to this court, plaintiffs have asserted that tests were available at the time of the purchase that would have detected the mercury in the calcine. Thomas McDonald also testified that he felt the calcine was a "sleeper"

22 - OPINION AND ORDER

part of the purchase because it had greater value than was being attributed to it within the land sale. Defendant's Ex. E, Deposition of Thomas McDonald, at page 63, line 10 - page 64, line 2.  After weighing the CERCLA factors listed above, the court finds that the McDonalds failed to conduct all appropriate inquiries.

Plaintiffs Thomas and Marian McDonald are PRPs under Oregon law for the Horse Heaven property and therefore cannot seek cost recovery.  Accordingly, defendant is granted summary judgment on plaintiffs' cost recovery claim.

## F.  Claim Six: Contribution Under Oregon Law

Oregon law allows recovery of "reasonable costs which are attributable to or associated with a removal or remedial action at a facility."  O.R.S. 465.200(24).  Plaintiffs assert a remedial action on the McDonald Ranch and seek contribution for that action.  Remedial action is defined as:

> those actions consistent with a permanent remedial action taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of a hazardous substance so that it does not migrate to cause substantial danger to present or future public health, safety, welfare or the environment.

O.R.S. 465.200(23)

Plaintiffs assert that under Oregon law there is no requirement of government involvement as a prerequisite for asserting remedial action.  Plaintiffs rely on the language of the statute that allows "any person" to file a claim for contribution.  O.R.S. 465.325(6)(a).  Plaintiffs also argue that a requirement of government involvement would render redundant the clause allowing a PRP who has cooperated with the government to sue another PRP for contribution.

However, requiring government involvement for a remedial action does not conflict with "any person" being able to file a claim for contribution – once it has been determined by the government

that remedial action is required, then any person can file a claim for contribution.  Additionally, government involvement does not render redundant the clause allowing parties who have cooperated with the government to sue those who did not cooperate.  Once the government determines that remedial action is required, some parties cooperate and some do not.  The clause protects those who cooperate and allows them to recover from those who do not.

In Oregon, the DEQ undertakes or requires a remedial action.  O.R.S. 465.260; O.R.S. 465.325; *see also Boeing Co. v. Cascade Corp.*, 920 F. Supp. 1121, 1124 (1996) (noting that the ultimate remedial action and the extent of the remediation are controlled by Oregon's DEQ and the federal Environmental Protection Agency either through consent decrees or mandate).  The Oregon Administrative Rules state that when DEQ learns of a potential release it "shall" evaluate and "will" determine whether "assessment, removal, remedial action, or other action is needed."  O.A.R. § 340-122-0071(1) & (3).  Here, DEQ has evaluated the McDonald Ranch and has determined that remedial action is not required.  Its tests revealed the mercury levels (8.18 mg/kg) were below the state's residential maximum (80 mg/kg).

Plaintiffs are not permitted to undertake investigations on the McDonald Ranch, make improvements to the land, call it a remedial action, and then demand cost recovery or contribution.  Defendant is entitled to summary judgment on plaintiff's contribution claim.

### G.  Claims Seven and Eight: Declaratory Judgment

Plaintiffs seek declaratory relief, alleging that although DEQ has not ordered any remediation, plaintiffs may still incur remedial costs in the future.  Plaintiffs seek declaratory relief to avoid future repetitive, wasteful litigation.

24 - OPINION AND ORDER

Declaratory relief is allowable only as to a justiciable controversy that can affect the present rights of the parties.  "To be justiciable, a controversy must involve a dispute based on present facts rather than on contingent or hypothetical events."  *TVKO v. Howland*, 73 P.3d 905, 908 (Or. 2003) (citations omitted); O.R.S. 28.010 (Oregon Declaratory Judgment Act).  Oregon's DEQ has not asked plaintiffs to perform remediation on the McDonald Ranch, and defendant has performed the work DEQ requested on the Horse Heaven property voluntarily.  Accordingly, addressing the merits of this lawsuit resolves the parties' justiciable disputes.  Any future claims for relief by plaintiffs are speculative.

Additionally, a court should refuse issuing a declaration "where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances."  *Brooks v. Dierker*, 552 P.2d 533, 536 (Or. 1976).  Here, plaintiffs seek statutory relief for their alleged harm.  Accordingly, defendant's motion for summary judgment as to plaintiffs' declaratory judgment must be granted.

### 4.        Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment against defendant's four counterclaims and five of defendant's affirmative defenses.  Plaintiffs also seek summary judgment for their negligence *per se* claims.

By this Opinion and Order, summary judgment is granted against plaintiffs' negligence *per se* claims, so plaintiffs' motion on those claims is denied as moot.  In light of the court's related decisions, plaintiffs' motion for summary judgment against defendant's affirmative defenses is also denied as moot.  Defendant withdraws Counterclaims One and Three, leaving only Counterclaims Two and Four before the court as remaining targets for plaintiffs' motion for summary judgment.

25 - OPINION AND ORDER

## A.  Counterclaim Two - Contribution Under Oregon Law

Defendant counterclaimed for contribution under ORS 465.257 for both the Horse Heaven property and the McDonald Ranch.  Plaintiffs seek summary judgment on this counterclaim as to the McDonald Ranch on grounds that defendant has incurred no costs related to the ranch.  However, plaintiffs sued defendant for contribution for costs relating to the cleanup of the McDonald Ranch.  Defendant's counterclaim ensures that plaintiffs' liability is included in any apportionment of the McDonald Ranch cleanup costs in the event defendant is found liable for such costs.  Because defendant is granted summary judgment as to the cleanup costs at the McDonald Ranch, defendant has no liability at the McDonald Ranch.  Accordingly, this portion of the counterclaim is dismissed as moot.

As to the Horse Heaven property, plaintiffs argue they are not PRPs and cannot be sued for contribution.  In the analysis of defendant's Motion for Summary Judgment above, this court found that plaintiffs Thomas and Marian McDonald are PRPs with respect to the Horse Heaven property.  Accordingly, this part of plaintiffs' Motion for Summary Judgment is denied as to Thomas and Marian McDonald.  Alex McDonald, however, is not a PRP with respect to the Horse Heaven property, as he is not, and has never been, the owner or operator of the calcine or the Site.  Accordingly, summary judgment is granted as to Alex McDonald.

## B.  Counterclaim Four - Contribution under CERCLA

Defendant brought this counterclaim under CERCLA § 107.  Plaintiffs seek summary judgment against defendant's counterclaim for contribution under CERCLA, asserting that such claim cannot be brought unless there is an underlying civil action.

CERCLA was amended in 1986 to include an express action for contribution for PRPs under § 113(f).  Prior to this amendment, courts found contribution actions were authorized implicitly under § 107.  *Key Tronic Corp. v. United States*, 511 U.S. 809, 816 (1994) (citing cases).  After the amendment, the two provisions are viewed as providing "somewhat overlapping" contribution remedies.  *Id*.

Under CERCLA § 113, parties who are PRPs may sue for contribution only if there has been a civil action under § 106 or § 107.  *Cooper Ind., Inc. v. Aviall Serv., Inc.*, 543 U.S. 157, 166 (2004). The *Aviall* Court acknowledged that § 113 contained a saving clause that "rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of action for contribution available to a PRP."  *Id*. at 166-167.  The *Aviall* Court declined to decide whether there was an implied right of contribution under § 107, but noted that in enacting § 113, Congress had explicitly recognized a particular set of contribution rights previously implied by courts.  *Id*. at 170-171.

The Ninth Circuit Court of Appeals addressed these sorts of claims as follows:

> Together, § 107 and § 113 provide and regulate a PRP's right to claim contribution from other PRPs. While § 107 created the right of contribution, the machinery of § 113 governs and regulates such actions, providing the details and explicit recognition that were missing from the text of § 107.  [This court] held that the enactment of § 113 in 1986 did not replace the implicit right to contribution many courts had recognized in § 107(a); rather, § 113 determines the contours of § 107, so that a claim for contribution requires the "joint operation" of both sections.

*Western Props.,* 358 F.3d at 685 (citing *Pinal Creek*, 118 F.3d at 1301-02, 1306).

Because the *Aviall* decision did not address contribution claims under § 107, district courts in the Ninth Circuit have continued to follow binding Ninth Circuit precedent, holding that there remains a right of contribution under § 107 regardless of the existence of prior litigation, albeit in unpublished decisions. *See, e.g. Aggio v. Aggio*, 2005 WL 2277037, at *5-6 (N.D. Cal. Sept. 19, 2005); *Ferguson v. Arcata Redwood Co.*, 2005 WL 1869445, at *6 (N.D. Cal. Aug. 5, 2005); *Kotrous v. Goss-Jewett Co. of N. California, Inc.*, 2005 WL 1417152, at *2 (E.D. Cal. June 16, 2005).

This case is analogous to the *Catellus* case.   The *Catellus* court addressed a situation similar to that which defendant faces in this case:

> Plaintiffs cannot sue under the express provisions of § 107 because they are PRPs, and they cannot sue under § 113 because they have neither been ordered by EPA to clean up the site nor been sued by a non-liable party for cost recovery.  However, as stated above, § 113(f)(1) expressly reserved actions for contribution in the absence of a civil action under § 106 or § 107.  Therefore, a private right of contribution under § 107(a) continues to exist as a viable cause of action.

*Catellus*, 910 F. Supp. at 1515 (citations omitted).

Here, defendant is assisting voluntarily in the assessment and cleanup of the Horse Heaven property.  This negates the need for litigation.

This court concludes that the *Western Properties* and *Pinal Creek* decisions rule properly that when there has not been a civil action, there still remains a private right of action for contribution under § 107.  When a plaintiff falls outside the technical requirements of § 113, the contribution claim is allowed under § 107, and the mechanics of apportionment are governed by the factors established in § 113.

Plaintiffs also move for summary judgment because they are not PRPs under CERCLA. Plaintiffs contend that they possess only an easement, and so are not owners of the calcine pile. However, as discussed above, plaintiffs Thomas and Marian McDonald retained full rights to the calcine and are its owners. A party is a PRP under CERCLA if the party is the current owner or operator of a "facility." 42 U.S.C. § 9607(a)(1). A facility is any site where a "hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." 42 U.S.C. § 9601(9). The term is construed broadly. *See 3550 Stevens Creek Assocs. v. Barclays Bank of Cal.,* 915 F.2d 1355, 1360 n.10 (9th Cir. 1990). Accordingly, those plaintiffs, but not Alex McDonald, are PRPs under CERCLA.

Plaintiffs also assert a third-party defense available under CERCLA. This defense applies when (1) the release was caused solely by a third party; (2) the third party was not an employee/agent of plaintiffs; and (3) plaintiffs exercised due care with respect to the hazardous substance. 42 U.S.C. § 9607(b)(3). This defense is construed narrowly. *Lincoln Props., Ltd. v. Higgins*, 823 F. Supp. 1528, 1539 (E.D. Cal. 1992).

Due care is established when the purchaser had no reason to know there was contamination at the time of purchase and the purchaser made "all appropriate inquiries" into the previous ownership and uses of the property. 42 U.S.C. § 9601 (35)(A)-(B). Due care also requires prompt attention to any environmental hazard, including attempts at removal or other remedies. § 9601(40)(D).

As discussed above, plaintiffs Thomas and Marian McDonald knew that the property contained a mercury mine, knew the bricks on the property contained dangerous levels of mercury, and knew that mercury was a dangerous substance. Accordingly, plaintiffs should have conducted "all appropriate inquiries," but failed to do so. Moreover, the only remediation efforts performed by

29 - OPINION AND ORDER

the McDonalds is having experts review the file and visit the site for this lawsuit.  Accordingly,

plaintiffs fail to meet the requirements of CERCLA's third-party defense.

    **5.**      **Defendant's Motions to Strike**

    Defendant's moved to strike portions of the declarations of Thomas, Marian and Alex

McDonald that were filed in support of plaintiffs' motion and in opposition to defendant's motion.  In

light of the court's ruling granting defendant's Motion for Summary Judgment, these motions are

denied as moot.

## IV.  CONCLUSION

    For the reasons provided above, plaintiffs' Motion in Limine [172] is DENIED, third-party

defendants' Motion for Summary Judgment [101] is GRANTED; defendant's Motion for Summary

Judgment [107] is GRANTED; defendant's Motions to Strike [120, 160] are DENIED as moot; and

plaintiffs' Motion for Summary Judgment [110] is GRANTED IN PART as follows:  defendant's

Counterclaims One and Three are voluntarily dismissed, defendant's Counterclaims Two and Four are

dismissed against defendant Alex McDonald, but remain against defendants Thomas and Marian

McDonald.

    IT IS SO ORDERED.

    DATED this   __14__   day of March, 2006.


                              __/s/Ancer L.Haggerty_____

                                  ANCER L. HAGGERTY
                             United States District Judge